UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Katherine Zahnleuter, | No. 2:20-cv-02492-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| Gabriel Lenhart; Law Offices of Gabriel Lenhart; Amy Mueller, an individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

This tort action arising in diversity involves an intra-family feud over an inheritance. Defendant Amy Mueller[1] moves to dismiss the complaint filed by her sister, plaintiff Katherine Zahnleuter, for failure to state a claim. Alternately, defendant Mueller requests the court stay the action under the *Younger* abstention doctrine, citing related ongoing litigation in state court. Defendants Gabriel Lenhart and his law offices do not take a position on the motion. The court heard argument via videoconference on April 16, 2021. Christopher Kolkey appeared as lead counsel for plaintiff; A. James Kachmar, Jr. appeared as lead counsel for defendant. The court **grants in part the motion to dismiss** for the reasons stated below. The court **denies the motion to stay.**

---

[1] As the court clarified at hearing, the court is not related to defendant, notwithstanding having the same last name.

1

## I. BACKGROUND

The court assumes the following factual allegations in the complaint are true and construes them in the light most favorable to the plaintiff, the non-moving party. Richard Mueller (Richard) and Joan Mueller (Joan) were the parents of Katherine Zahnleuter (Katherine) and Amy Mueller (Amy).[2] Compl. ¶ 15, ECF No. 1. Katherine and Amy are half-siblings to Richard's child from a previous marriage, Julie Van Patter (Julie). *Id.* Today, Katherine resides in Michigan, and Amy resides in California. *Id.* ¶¶ 7, 10. Joan and Richard lived in Nevada County until their deaths in October 2017 and August 2018, respectively. *Id.* ¶ 17.

In 2004, before their deaths, Richard and Joan created a living trust by agreement. *See id.* ¶ 18. The 2004 agreement provided that upon the death of both parents, Amy and Katherine "would serve as trustees 'one at a time and in the order listed.'" *Id.* ¶ 19. The agreement provided for an equal distribution of assets between Amy and Katherine, as well as a specific $10,000 gift to Julie. *Id.* In 2005, Richard and Joan executed an amendment to the trust (the First Amendment). *Id.* ¶ 20. This initial amendment left undisturbed the 2004 agreement's provisions for succession of trustees and distribution terms. *Id.* After Joan died in October 2017, *id.* ¶ 21, Richard was diagnosed with terminal cancer in December 2017, *id.* Shortly after his diagnosis, Richard worked with Katherine, Amy, and his attorney Gabriel Lenhart (Lenhart) to amend the trust a second time and make Amy and Katherine both acting trustees (the Second Amendment). *Id.* ¶ 23. Richard's health deteriorated, and he became clinically depressed, prone to confusion, and slept more than twenty hours a day. *Id.* ¶ 26. In January 2018, Amy moved into Richard's house in California, and he became dependent on her for bathing, medications, transportation, and other essential care. *Id.* ¶¶ 24–25.

Two months later, a conflict erupted between Amy and Katherine while Katherine was visiting. *See id.* ¶¶ 27–29. The conflict spurred Amy to procure a new amendment to the 2004 agreement (the Third Amendment), which significantly increased Amy's inheritance. *See id.* ¶¶ 29–34. Amy contacted Lenhart to prepare the Third Amendment without Richard's or

---

[2] The court refers to these parties by their first names for clarity.

Katherine's knowledge. *See id.* ¶¶ 30–32. Specifically, Amy sent Lenhart a forged handwritten letter, purportedly from Richard, expressing Richard's intent to change the distributive terms of the trust. *Id.* ¶¶ 32, 34.

The new terms of the Third Amendment departed starkly from those of the Second Amendment. First, they granted Amy a life estate in Richard's home and reserved $100,000 for expenses to keep up the property. *Id.* ¶ 34. Second, the terms provided $10,000 each to Richard's nieces and named Richard's brother, Thomas W. Mueller, Sr. (Tom Sr.), as successor trustee. *Id.* ¶ 34. Third, Richard's daughters, including Amy and Katherine's half-sister Julie, were to share equally in the residue after the other specified distributions. *Id.* ¶ 35. Richard executed the Third Amendment on April 18, 2018. *Id.* ¶¶ 33, 36. The parties refer to this version of the Third Amendment as the "first version" of this amendment.

After Richard signed the first version of the Third Amendment, Lenhart and Amy noticed that it erroneously gave half-sister Julie an equal share in the residue. *Id.* ¶ 37. Lenhart and Amy then created what the parties dub the "second version" of the Third Amendment to correct this error. *Id.* ¶ 39. Lenhart modified the Third Amendment at Amy's direction, altering the distributive terms and adding extra carriage returns to append the previously executed signature block in a way that looked as if it supported the second version. *Id.* ¶¶ 43–44. One day after Richard's death, Amy sent Tom Sr. a copy of the second version of the Third Amendment agreement. *Id.* ¶ 47. Tom Sr. shared this version with Katherine two days later. *Id.* ¶ 48. Katherine did not receive the first version of the Third Amendment and did not know it existed until later. *See id.* ¶¶ 46–48, 53.

Katherine then filed a petition in Nevada County Superior Court to invalidate the Third Amendment, namely the second version as the only version she knew about at the time; Katherine alleged Richard had not complied with required trust procedures because the Third Amendment was not delivered to her before his death. *Id.* ¶ 49. The validity of the second version of the Third Amendment was heavily litigated leading up to a trial date of June 17, 2020. *Id.* ¶ 51. On the eve of trial, Katherine's attorney noticed inconsistencies between the trust documents, discovered there were in fact two versions of the Third Amendment, and confronted Lenhart

about the fraud he then suspected during direct examination. *Id.* ¶¶ 53–54. Lenhart denied that he had committed fraud. *Id.* ¶ 54. After Lenhart's testimony, Amy's counsel raised the issue with the court by saying, "we have a suspicion of fraud on the Court"; the judge then suspended trial. *Id.* ¶¶ 55–56. During the suspension, Amy reversed course, took the position that the Third Amendment was invalid in total, and filed a petition to invalidate it; Katherine did not oppose as she had been seeking that very relief for eighteen months. *Id.* ¶ 56. The state court invalidated both versions of the Third Amendment, effectively restoring the trust to its pre-dispute status in the form of the Second Amendment. *Id.*

While the trust action was still pending in Nevada County Superior Court, Katherine initiated another action against Amy in the same state court, alleging Amy had committed elder abuse against Richard. Motion to Dismiss (MTD) at 6; Opp'n at 14; *see also Zahnleuter v. Mueller*, No. CU19-083601 (Cal. Sup. Ct. Nevada Ct. filed Feb. 5, 2019).[3] On December 16, 2020, Katherine filed this separate federal action, seeking damages in the form of her attorneys' fees and other expenses incurred during the state court trust litigation over the validity of the Third Amendment. She asserts three claims: (1) tort of another; (2) fraudulent concealment; and (3) constructive fraud. Compl. ¶¶ 61–84. Amy moves to dismiss Katherine's first claim for failing to join all the alleged joint tortfeasors as required by California law in actions claiming tort of another. MTD at 5–6. She moves to dismiss the second and third claims as improper attempts to recover attorneys' fees and litigation costs. *Id.* at 6–7. In the alternative, if the complaint is not dismissed, Amy moves for a stay under the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971), until the elder abuse litigation in state court concludes. MTD at 7–8.

---

[3] In conjunction with her motion to dismiss, Katherine filed a request for judicial notice, covering the complaint (Exhibit A) and a docket printout (Exhibit B) from the ongoing state court action in *Zahnleuter v. Mueller*, No. CU19-083601 (Cal. Sup. Ct. Nevada Ct. filed Feb. 5, 2019). March Req. for Judicial Not., ECF No. 7-3. Prior to hearing, Katherine also filed a request for judicial notice of Amy's motion for summary adjudication of issues in the same case. April Req. for Judicial Notice, ECF No. 14. The court grants the requests for judicial notice as to the existence of these documents, because they are matters of official public record "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6 ("We may take judicial notice of court filings and other matters of public record.").

## II. LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) quoted in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); compare *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

**III. ANALYSIS**

**A. Tort of Another**

California law recognizes the "tort of another" doctrine. *Prentice v. N. Am. Title Guar. Corp., Alameda Div.*, 59 Cal. 2d 618, 620 (1963) (establishing the principle). This doctrine allows tort actions to recover costs and fees incurred "instituting or defending an action as a direct result of the tort" of a third-party.[4] *Lee v. W. Coast Life Ins. Co.,* 688 F.3d 1004, 1008 n.4 (9th Cir. 2012) (citing *Third Eye Blind, Inc. v. Near North Entm't Ins. Serv., LLC,* 26 Cal.Rptr.3d 452, 463 (2005)). "A claim under the tort of another doctrine thus involves three parties: the claimant, the tortfeasor, and the third party; and the tortfeasor must have committed a tort against the claimant." *Appel*, 2019 WL 3858888, at *8. A claimant may recover damages from the tortfeasor for "reasonably necessary loss of time, attorney's fees, and other expenditures" incurred in the third-party litigation. *Id.*

For the "tort of another" doctrine to apply, the tortfeasor must owe a duty to the person seeking compensation. *See Mega RV Corp.,* 225 Cal. App. 4th at 1342. For example, in *Mega RV Corp*, a buyer brought an action against a retailer of a motor home for alleged defects. *Id.* at 1322. The RV retailer then filed a cross-complaint against one of the RV parts manufacturers seeking indemnity. *Id.* The superior court found the retailer was not entitled to indemnity and allowed the parts manufacturer to recoup attorneys' fees under the "tort of another" doctrine. *Id.* at 1322–23. The appellate court disagreed and reversed the award of attorneys' fees, deciding the retailer owed no duty of care to the parts manufacturer when servicing the motor home. *Id.* at 1339–42. If there is no duty, there is no tort, so "the tort of another doctrine cannot apply." *Id.* at 1342; *but see Manning v. Sifford*, 111 Cal. App. 3d 7, 11 (1980) (finding plaintiffs could still recover from defendant that did not owe them a duty when defendant acted wrongfully,

---

[4] Some courts describe the "tort of another" doctrine as an exception to the American Rule, which requires parties to pay their own litigation costs absent a contract or statutory provision otherwise. *See, e.g., Appel v. Bos. Nat'l Title Agency, LLC*, No. 18-873, 2019 WL 3858888, at *7–8 (S.D. Cal. Aug. 15, 2019) (discussing California law); *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44 (2009). Other California courts describe it as merely a measure of tort damages. *See, e.g., Mega RV Corp.,* 225 Cal. App. 4th 1318, 1337 (2014); *Sooy v. Peter,* 220 Cal. App. 3d 1305, 1310 (1990). The analysis is the same under either conception of the rule.

6

intentionally, and harm was natural, proximate, and foreseeable cause of defendant's wrongful conduct).

Here, the claimant is Katherine; the alleged tortfeasors are her sister Amy and Lenhart, the attorney; and the third party is the trust. The tort is the alleged fraud and conspiracy to procure the invalid "second version" of the Third Amendment by Amy and Lenhart. Compl. ¶ 67. That tortious conduct allegedly forced Katherine to file the trust action challenging the validity of the Third Amendment. *Id.* ¶ 68. And Katherine's alleged injury is the loss of "hundreds of thousands of dollars in attorneys' fees, loss of time, and other expenditures in the Trust action." *Id.* ¶ 69. These allegations, if true, permit an inference of Katherine's success on the merits of her "tort of another" claim.

In her motion, Amy does not argue otherwise.[5] She instead moves to dismiss based on a condition of bringing an action based on the "tort of another doctrine": if multiple tortfeasors owe a duty to a claimant, that claimant must sue all of the joint tortfeasors. *See Gorman v. Tassajara Dev. Corp.,* 178 Cal. App. 4th 44, 81 (2009). Otherwise the "tort of another" doctrine could be "applied in every multiple tortfeasor case with the plaintiff simply choosing the one with the deepest pockets . . . ." *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 57 (1992). Here, Amy argues Tom Sr., the successor trustee, and Claire West, the notary, are joint tortfeasors who must be joined if this case is to continue. *See* MTD at 5–6.

The viability of Katherine's first claim therefore depends on whether West and Tom Sr. need to be named as "joint tortfeasors." Joint tortfeasors are all those "who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." Black's Law Dictionary (11th ed. 2019). "The natural reading of 'joint tortfeasor' implies a liability arising from the same wrong and the same injury." *Fed. Deposit Ins. Corp. v. Ching*, 189 F. Supp. 3d 978, 996 (E.D. Cal. 2016). According to the complaint, West testified that Richard had signed

---

[5] At hearing, Amy's counsel briefly suggested a new argument to the effect that Amy may not be a true third-party because she is a respondent in the underlying trust action. This argument was not raised in the moving papers and, to the court's knowledge, no California court has decided whether a joint tortfeasor respondent in a trust action is a true third-party for purposes of a "tort of another" claim, the court declines to address it here.

7

the second version of the Third Amendment, when in fact he had only signed the first version. *Id.* ¶ 59. Additionally, West testified that only she, Amy and Richard were present when the Third Amendment was signed; however, in her capacity as a notary, she previously verified that Tom Sr. had also been in the room. *Id.* Tom Sr. allegedly emailed a copy of the second version of the Third Amendment stating Richard had signed it, even though Richard did not. *Id.* ¶ 60.

In resolving the question before it, the court finds instructive the joint tortfeasor analysis in *Appel, supra*. In *Appel*, plaintiffs attempted to invoke the "tort of another" doctrine to recover attorneys' fees incurred in an action against a real estate auction company (the third party) based on an alleged tort committed by the title agency (the defendant). 2019 WL 3858888, at *8. The court found plaintiffs "pled themselves out of using the tort of another doctrine." *Id.* Plaintiffs alleged the same conduct by the auction company and the title company, namely not returning the escrow funds, contributed to a single injury, the withholding of the funds. *Id.* Additionally, plaintiffs "clearly already sued" the third party "for the same conduct" they then alleged in the later case the defendant committed. *Id.* Therefore, the defendants were joint tortfeasors and plaintiff could not seek attorneys' fees from only one by invoking the "tort of another." *Id.* at *8–*9. *See also MJT Sec., LLC v. Toronto-Dominion Bank*, No. 4-16362, 2006 WL 1236661, at *2 n.4 (9th Cir. 2006) (holding doctrine may be used if defendants commit "separate and distinct tort[s]" but not if they are joint tortfeasors).

Unlike the allegations in *Appel*, the allegations here, viewed in the light most favorable to Katherine, do not permit the court to infer that West and Tom Sr. are joint tortfeasors. Katherine does not allege that West and Tom Sr. engaged in the same conduct as Amy and Lenhart. *See generally* Compl. ¶¶ 59–60. Katherine alleges West falsely testified that Richard executed the "second version" of the Third Amendment, when he in fact only signed the first version. *Id.* ¶ 59. In addition, Katherine alleges West "acted negligently as a notary" because she "failed to fully review and become familiar with [the "initial version" of the Third Amendment]." *Id.* Katherine also alleges West "falsified at least one document related to the Third Amendment" because her testimony and the notary documents do not align. *Id.* Further, Katherine alleges Tom Sr.'s testimony about who was present during execution of the Third Amendment conflicts with West's

8

testimony, and when Tom Sr. emailed Katherine the "second version" of the Third Amendment, he "proffered it as the one Richard signed (even though Richard never signed it)." *Id.* ¶ 60.

In contrast, Katherine alleges Amy and Lenhart "participated in a fraudulent scheme" to create the invalid "second version" of the Third Amendment. *Id.* ¶¶ 37–48. Specifically, Katherine engaged in fraud or conspiracy or both when she "directed Lenhart to make the changes to the ['initial version' of the Third Amendment] and draft a 'second version.'" *Id.* ¶ 67. Similarly, Katherine alleges Lenhart committed legal malpractice, negligence, breach of fiduciary duty, fraud and/or conspiracy by drafting and adding extra carriage returns to create the invalid "second version" of the Third Amendment "with knowledge that Richard had already signed the 'initial version.'" *Id.* ¶ 66. Katherine alleges both Amy and Lenhart "failed to disclose to Katherine that Richard did not sign the 'second version' of the Third Amendment" and "conspired with the other [d]efendants to defraud Katherine, knew that the other [d]efendants' tortious conduct constituted breaches of duty, and gave substantial assistance or encouragement to the other [d]efendants in committing such tortious conduct." *Id.* ¶¶ 66–67. Although West and Tom Sr. are alleged to have acted negligently or wrongfully, their alleged misconduct is distinct from the alleged fraudulent and conspiratorial conduct in which Amy and Lenhart engaged to create the invalid "second version" of the Third Amendment.

Tom Sr. and West are not joint tortfeasors. The alleged joint tortfeasors, Amy and Lenhart, are named as defendants. Therefore the motion to dismiss Katherine's first claim under the "tort of another" doctrine is **denied**.

**B.    Fraudulent Concealment and Constructive Fraud**

Amy also moves to dismiss Katherine's remaining two claims, fraudulent concealment and constructive fraud, arguing the damages sought, attorneys' fees and other litigation expenses, are not recoverable. MTD at 6–7. To plead a cause of action for fraudulent concealment or constructive fraud, a plaintiff must allege injury or damages sustained as a result of the tortious conduct. *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1130–31 (2014). As explained above, damages in a tort action do not ordinarily include compensation for attorneys' fees or other expenses absent a statutory or contractual provision otherwise.

9

Restatement (Second) of Torts § 914 (1979); Cal. Civ. Proc. Code § 1021.  Limited exceptions exist, in addition to the "tort of another" doctrine.  At the same time, California courts are wary to expand non-statutory exceptions to the general rule against fee-shifting.  *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 507 (1984) (citing *Bauguess v. Paine,* 22 Cal. 3d 626, 636 (1978)).  Here, the damages Katherine pleads in connection with her fraud claims are unavailable as a matter of law.  Katherine may not personally recover attorneys' fees and other litigation expenses from Amy except under the "tort of another doctrine."  6 Witkin, Summary 11th Torts §§ 1831, 1832 (2020).

      Katherine argues incorrectly that damages for attorneys' fees are recoverable here because her fraud claims are predicated on Amy's "unfounded and frivolous defense of the 'second version' of the Third Amendment."  Opp'n at 12.  California law recognizes no such "bad faith" exception in a case like this one.  This is not an action against an insurer.  *See Brandt v. Superior Ct.*, 37 Cal. 3d 813, 817 (1985).  Nor do any statutory exceptions apply.  *See* 7 Witkin, Cal. Proc. 5th Judgm. § 222 (2020).  Nor can this court award costs or fees through an exercise of its inherent authority.  *See Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.,* 976 F.2d 541, 550 (9th Cir. 1992) ("[N]o federal appellate authority in or out of the Ninth Circuit has clearly approved an order shifting attorney's fees based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit.  We decline to do so.").  None of the complaint's fraud allegations show that this is one of the few "exceptional cases" in which an award is necessary "for dominating reasons of justice."  *Id.* (citing *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 175 (9th Cir. 1989)).

      The cases Katherine cites in support of an exception do not support her position.  In both cases, a state probate court invoked its equitable power over trusts to charge attorneys' fees for bad faith actions, not to award attorneys' fees as an element of tort damages.  *See Pizarro v. Reynoso*, 10 Cal. App. 5th 172, 183 (2017); *Rudnick v. Rudnick*, 179 Cal. App. 4th 1328, 1335 (2009).  Further, in one of the cases, the court clarified that the equitable power it invoked "does not support making [trustees] personally liable for attorney fees and costs."  *Pizarro*, 10 Cal. App. 5th at 183.  An award for bad faith conduct is only available by way of a deduction from trust

assets. *Id.* Absent authority providing a bad faith exception to the general rule against allowing attorneys' fees as damages in a tort action, the court must dismiss Katherine's claims for fraudulent concealment and constructive fraud.

The court **grants** Amy's motion to dismiss Katherine's second and third claims for fraudulent concealment and constructive fraud, respectively.

### C. *Younger* Doctrine

Finally, Amy argues that if the complaint is not dismissed, the court should stay the matter under the *Younger* doctrine pending resolution of Katherine's financial elder abuse action, which is proceeding in Nevada County Superior Court. MTD at 7–9. First articulated in *Younger v. Harris*, 401 U.S. 37 (1971), the *Younger* doctrine is a form of abstention that prevents a federal court from intervening in state criminal proceedings except in extraordinary circumstances. *Younger*, 401 U.S. at 41. The Court has since extended the *Younger* doctrine to certain civil cases that implicate an "important state interest," a requirement that can be met when cases "bear a close relationship to proceedings criminal in nature." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). But circumstances that meet this requirement are "exceptional." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). In most cases, a federal court's obligation to decide a case is "virtually unflagging." *Id.* at 77. In civil cases, *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). If these "threshold elements" are strictly satisfied, the court considers whether the federal action would have the practical effect of enjoining the state proceedings. *Id.* Only if the federal action would act as an injunction should the court abstain under *Younger*. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).

Abstention is not warranted in this case. First, the threshold requirements articulated by the Ninth Circuit in *ReadyLink* are not met. Although there is an ongoing proceeding in state court between Katherine and Amy, the matter is not a quasi-criminal enforcement action. Nor

1    does it involve California's "interest in enforcing the orders or judgements of its courts."
2    *ReadyLink Healthcare, Inc.,* 754 F.3d 754 at 759. The ongoing state court action rests on a
3    financial elder abuse claim under the California Welfare and Institutions Code, *see generally*
4    Request for Judicial Notice, Ex. A, ECF No. 7-3, and does not implicate probate or trust matters
5    which may well raise interests of unique importance to the state. *See Sconiers v. Whitmore*, No.
6    08-1288, 2008 WL 5113651, at *5 (E.D. Cal. Dec. 1, 2008) ("state has an important interest in
7    governing family relationships and settling the estates within its jurisdiction.").

Even if the *ReadyLink* elements were satisfied, a decision by this court would not "practically enjoin" the state court proceedings here. *AmerisourceBergen*, 495 F.3d at 1149. The state court action stems from the same underlying events, but as noted brings a separate claim. Deciding whether Katherine may recover attorneys' fees and other expenses incurred during the trust action would not prevent the Nevada County Superior Court from hearing and deciding whether Amy is civilly liable for alleged financial elder abuse. Fundamentally, Katherine has the right she has exercised here to choose her forum as long as federal jurisdiction is proper. *Id.* at 1154.

Amy's request for a stay pending resolution of the financial elder abuse matter in Nevada County Superior Court is **denied**.

**IV.    CONCLUSION**

The court **denies** the motion to dismiss Katherine's "tort of another" claim because all joint tortfeasors are named as defendants.

The court **grants** the motion to dismiss, in part, as to Katherine's fraudulent concealment and constructive fraud claims because attorneys' fees and other litigation expenses are not recoverable as tort damages on these factual allegations. Finally, the court **denies** the request to stay under the *Younger* abstention doctrine.

The court sets the matter for status (pretrial scheduling) conference on May 20, 2021, with a filing of a joint status report due fourteen (14) days prior.

/////

/////

1       This order resolves ECF No. 7.

2       IT IS SO ORDERED.

3       DATED: April 30, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE